1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | CASE NO. C19-1175 MJP |
|---|---|
| Plaintiff, | ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR DETERMINATION |
| v. | |
| NORTH AMERICAN TERRAZZO INC, | |
| Defendant. | |

17

18

19

20

21

22

23

24

This matter comes before the Court on: (1) Plaintiff Travelers Property Casualty

Company of America's (Travelers) Motion for Partial Summary Judgment (Dkt. No. 55); (2)

Plaintiff Travelers' Motion for Summary Judgment Regarding Defendant's Extra-Contractual

Claims (Dkt. No. 82); (3) Defendant North American Terrazzo Inc.'s (NAT) Motion for Partial

Summary (Dkt. No. 71); and (4) Defendant NAT's Motion for a Determination (Dkt. No. 96).

Having reviewed the Motions, the oppositions (Dkt. Nos. 87, 92, 104, and 107), replies (Dkt.

Nos. 98, 99, 110, and 111), and all supporting materials, the Court Rules as follows: The Court

1  (1) DENIES AS MOOT Travelers' Motion for Partial Summary Judgment; (2) DENIES

2  Travelers' Motion for Summary Judgment re: Extra-Contractual Claims; (3) GRANTS NAT's

3  Motion for Partial Summary Judgment; and (4) DENIES NAT's Motion for Determination.

4                                **BACKGROUND**

5  **A.      Pending Motions**

6         Travelers has filed two summary judgment motions. One seeks an order that it has no

7  duty to defend or indemnify NAT. (Dkt. No. 55.) The other seeks summary judgment on NAT's

8  bad faith and coverage by estoppel claim, Washington Consumer Protection Act (CPA) claim,

9  and negligence claim. (Dkt. No. 82). NAT moves for partial summary judgment on its bad faith

10 and coverage by estoppel claim, asking that the declaratory judgment action be dismissed with

11 prejudice subject to a reasonableness determination of the underlying settlement and damages.

12 (Dkt. No. 71.) And NAT's Motion for a Determination seeks an order finding that Travelers'

13 claims manual is not confidential. (Dkt. No. 96.)

14 **B.      Factual Background**

15        NAT is a flooring contractor and insured by Travelers through a comprehensive general

16 liability (CGL) policy. NAT acted as a subcontractor to SODO Builders (SODO) to install an

17 epoxy flooring on two floors of the 13 Coins restaurant in SODO. (Clark Decl. ¶ 4 (Dkt. No.

18 88).) In late 2017 NAT coated the existing concrete floors at the 13 Coins restaurant with an

19 epoxy supplied by a Terrazzo & Marble Supply Co. of Illinois (T&M). (Rubenstein Decl. ¶ 3

20 (Dkt. No. 89).) The work was completed in December 2017, and 13 Coins began its 24/7

21 restaurant operations in mid-February 2018. (Id. ¶¶ 3-4.) No complaints were made about the

22 flooring until May 10, 2018, when 13 Coins noted damage around an upstairs kitchen at the

23 dishwashing station. (Clark Decl. ¶ 7 (Dkt. No. 88 at 2).) Four months later, more damage was

24

1   identified in various parts of the kitchen and breakfast bar areas, spanning two floors. (Id. at ¶ 8.)

2   SODO and 13 Coins provided NAT a notice of unsatisfactory performance on September 24,

3   2018. (Id. ¶ 9.)

4        In a letter to NAT dated October 23, 2018, T&M laid out the results of a lab analysis it

5   performed on a sample of the epoxy flooring. It identified five potential causes of the damage.

6   (Falstad Decl. Ex. D at 5 (Dkt. No. 57-4).) Three related to work performed by NAT—

7   preparation of the existing concrete floors, improper mixture of the epoxy, and inadequate

8   thickness of the application. (Id.) The other two possible causes were not related to NAT's work:

9   (1) exposure to heat above 140 degrees Fahrenheit, and (2) standing water. (Id.) The record

10  contains no evidence of any other lab analysis of the flooring.

11       On December 3, 2018, NAT reported to its insurance broker there was a potential claim

12  from SODO "involv[ing] a failure of the epoxy flooring in the kitchen, and is the range of

13  $400K-$500K including replacement materials and labor, removal and replacement of kitchen

14  equipment, HVAC, and lost business." (Falstad Decl. Ex. C at 2 (Dkt. No. 57-3).) This claim was

15  submitted to Travelers through NAT's insurance broker. (Id.) Within two weeks Travelers

16  agreed to provide a "courtesy defense even though no 'suit' had been filed against NAT." (Dkt.

17  No. 55 at 5). And on December 20, 2018 Travelers issued a reservation of rights—it neither

18  accepted nor denied the tender of the claim. (Falstad Decl. Ex. F (Dkt. No. 57-6).) Travelers

19  appointed defense counsel for NAT. (Falstad Decl. ¶ 14 (Dkt. No. 57).) And the Parties do not

20  dispute that Travelers split its claim file between a coverage adjuster and claims adjuster.

21  (Thorne Decl. ¶ 5 (Dkt. No. 90).) Allan Ryce was the claims adjuster and Leslie Stillman was the

22  coverage adjuster for five weeks before Dana Falstad replaced her. (Id. ¶¶ 3, 5.)

23

24

1    After reserving its right as to SODO's and 13 Coins' demand, NAT agreed to replace the

2    flooring in early January 2019. (Rubenstein Decl. Ex. 2 (Dkt. No. 89-2).) Travelers was aware

3    that NAT would be replacing the flooring with quarry tile and the timing of the replacement

4    project. (Falstad Decl. ¶ 20 (Dkt. No. 57); Thorne Decl. Ex. B. at 19-23, 26 (Dkt. No. 74-2).)

5    Travelers sent a representative to take photographs and perform a site inspection on December

6    28, 2018. (Id. ¶ 21.) The Travelers representative took no flooring samples and did not perform

7    further investigation. (Thorne Decl. Ex. B. at 19-23, 26 (Dkt. No. 74-2).)

8    NAT began replacing the epoxy flooring with tiles in January 2019 and completed the

9    project at some point in March 2019. (Rubenstein Decl. Ex. 3 (Dkt. No. 89-3).) Travelers was

10   aware of this timeline. (Thorne Decl. Ex. B. at 19-23, 26 (Dkt. No. 74-2).) In early January 2019,

11   Travelers' adjuster reported that an "[i]nvestigation into damages [was] needed as [it] appears

12   there will be significant uncovered claims (work/product)." (Id. at 23.) But at no time during this

13   repair period did Travelers send anyone to inspect the epoxy flooring or the kitchen removal and

14   reassembly. (Id. at 19-23, 26; Marconi Decl. Ex. B (Dkt. No. 73-2).) Nor did Travelers take a

15   sample of the flooring or perform a forensic investigation into the cause of the flooring failure.

16   Travelers' coverage adjuster did not visit the site or retain an expert before the repairs were

17   completed by March 14, 2019. (Thorne Decl. Ex. B. at 19-23, 26 (Dkt. No. 74-2); Falstad Decl.

18   Ex. O at 3 (Dkt. No. 57-15).) So by the time Travelers retained Jim Phillips as a flooring expert

19   the damaged floor ceased to exist and Phillips could not test it. (e Falstad Decl. ¶ 30 (Dkt. No.

20   57); Rubenstein Decl. Ex. G at 3 (Dkt. No. 22-7); (Thorne Decl. Ex. B at 19-26 (Dkt. No. 74-2).)

21   The absence of a sample to test precluded Phillips from opining as to the cause of the

22   damage. Phillips reported to Travelers in early May 2019 that no conclusions as to causation

23   could be drawn without lab analysis: "[I] cannot determine the cause of the failure without

24

1   analyzing a product sample to determine the laboratory results of the mixture of the product" and

2   "[a] forensic laboratory analysis will be able to determine what is the probable cause of failure."

3   (Rubenstein Decl. Ex. G at 3 (Dkt. No. 22-7).) Based on his desk review, Phillips also opined

4   that "[t]he flooring material was either improperly mixed or it was a faulty product from the

5   supplier." (Id.) Travelers knew this before it filed this suit in late July 2019.

6        Travelers has never provided a coverage determination or completed its investigation into

7   the underlying damage. (Thorne Decl. ¶ 20; Falstad Dep. at 72:1-73:13 (Dkt. No. 92-1).)

8   Travelers variously claims that this is due in part from NAT's failure to provide information to

9   Falstad when requested. One piece of information that NAT did not provide Travelers before this

10  lawsuit was filed was an October 2018 letter from T&M containing its opinions based on the lab

11  analysis of samples of the failed flooring. (Falstad Decl. ¶¶ 51-2 (Dkt. No. 57).) But there is no

12  evidence that Travelers undertook a timely or thorough investigation.

13       Travelers' own motion for summary judgment confirms that there is a dispute of fact as

14  to the cause of the flooring failure. (See Dkt. No. 55 at 4 (citing and relying on the October 2018

15  letter from T&M).) The October T&M letter identifies five potential causes not all of which are

16  attributable to NAT's work. NAT's president, Randall Rubenstein now identifies five other

17  potential causes, though he does not explain the basis for his beliefs. (Rubenstein Decl. ¶ 5 (Dkt.

18  No. 89).) Neither NAT, nor Ryce, nor NAT's appointed counsel sought any expert investigation

19  into the cause of the flooring failure. (See Rubenstein Decl. Ex. 3 at 5 (Dkt. No. 89-3 at 5).)

20       The two expert declarations Travelers filed with its Reply to support its Motion do not

21  resolve this dispute. (Dkt. Nos. 99. 101, 102.) Despite earlier claiming that a forensic analysis of

22  an actual flooring sample was necessary to determine causation, Phillips now opines that "the

23  failure of the epoxy flooring and the need to replace the flooring was the result of the failed

24

1  epoxy installation by NAT." (Phillips Decl. Ex. 1 at 3 (Dkt. No. 102-1 at 3).) And Scott

2  McClellan opines that "the failure of the epoxy flooring and the need to install the new ceramic

3  tile was the result of the failed epoxy application by NAT." (McClellan Decl. at ¶ 4 (Dkt. No.

4  101).) Neither McClellan nor Phillips performed any lab analysis. (See Dkt No. 101-1; Dkt. No.

5  102-1.) And neither provides support for these conclusory statements.

6       On June 18, 2019, SODO provided a draft complaint to NAT, which outlined a request

7  for damages to cover the costs SODO incurred for its work related to the flooring removal and

8  replacement, and kitchen disassembly, storage, and reassembly. (Rubenstein Decl. Ex. 4 (Dkt.

9  No. 89-4).) SODO claimed it incurred costs in dismantling, storing, and reinstalling various

10  pieces of kitchen equipment during the flooring repairs. (Clark Decl. ¶¶ 10-11 (Dkt. No. 88).) 13

11  Coins claimed to have lost income during the repair period because it lost the use of kitchen

12  equipment and portions of the restaurant. (Rubenstein Decl. Ex. 3 at 3 (Dkt. No. 89-3).) A

13  mediation between SODO, T&M, and NAT was scheduled for October 29, 2019, though it was

14  not intended to address 13 Coins' claims. (Id.) Before the mediation occurred, Travelers filed

15  this declaratory action on July 26, 2019. (Dkt. No. 1.)

16       This first mediation was unsuccessful. On April 30, 2020, NAT, SODO, 13 Coins, T&M

17  held a second mediation at which Ryce was present. (Falstad Decl. ¶ 53 (Dkt. No. 57).) In a pre-

18  mediation memorandum, NAT's defense attorney noted that settlement was favorable in order to

19  avoid escalating attorneys' fees that NAT could be forced to pay. (Rubenstein Decl. Ex. 1 (Dkt.

20  No. 89-1) at 7.) The claims were settled after the mediation without contribution from Travelers

21  such that 13 Coins was to receive $300,000 and SODO to receive $200,000. (See Rubenstein

22  Decl. ¶ 8 (Dkt. No. 105); Rubenstein Dep. at 209:15-20 (Dkt. No. 56-1).)

23

24

1    The Parties do not dispute that Travelers provided appointed defense counsel for the

2    underlying dispute. (Falstad Decl. ¶ 14 (Dkt. No. 57).) NAT was initially represented by William

3    Spencer through the repair process that occurred in early 2019 until September 2019. (Id. ¶¶ 15-

4    16, 47.) Spencer spent a total of 6 hours with the file and never retained any expert to investigate

5    the cause of the flooring damage. (Marconi Decl. Ex. F. (Dkt. No. 91-6); Rubenstein Decl. Ex. 3

6    at 5 (Dkt. No. 89-3).) NAT fired Spencer in September 2019 and retained its own defense

7    counsel. Travelers prevailed upon NAT to appoint new counsel, Bruce Gilbert, who represented

8    NAT through the settlement mediation process. (Rubenstein Decl. ¶ 10 (Dkt. No. 89); Falstad

9    Decl. ¶ 48 (Dkt. No. 57).)

10    **ANALYSIS**

11    **A.    Legal Standard**

12    "The court shall grant summary judgment if the movant shows that there is no genuine

13    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

14    Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving

15    party fails to make a sufficient showing on an essential element of a claim in the case on which

16    the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

17    There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

18    rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio

19    Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

20    evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). Conversely, a genuine

21    dispute over a material fact exists if there is sufficient evidence supporting the claimed factual

22    dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v.

23    Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors

24

1    Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). And underlying facts are viewed in the light most

2    favorable to the party opposing the motion. Matsushita, 475 U.S. at 587.

3    **B.      Cross-Motions on NAT's Extra-Contractual Claims**

4         The Parties have cross-moved on NAT's bad faith and coverage by estoppel claim.

5    Travelers also moves for summary judgment on NAT's CPA and negligence claims. The Court

6    GRANTS NAT's Motion and DENIES Travelers' Motion.

7         **1.      Travelers engaged in bad faith and NAT is entitled to coverage by estoppel**

8         The Court finds undisputed evidence that Travelers engaged in bad faith and that NAT is

9    entitled to coverage by estoppel.

10              **a.      Relevant legal standards**

11        "It is a cornerstone of insurance law that an insurer may never put its own interests ahead

12   of its insured's." Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 803 (2014), as corrected

13   (Aug. 6, 2014). An insurer owes the insured a duty of good faith. Tank v. State Farm Fire & Cas.

14   Co., 105 Wn.2d 381, 385 (1986); RCW 483.01.030. This is a "quasi-fiduciary" duty—something

15   less than a true fiduciary duty." Van Noy v. State Farm Mut. Auto. Ins. Co., 142 Wn.2d 784, 792

16   (2001). "[A]n insurance company's duty of good faith rises to an even higher level than that of

17   honesty and lawfulness of purpose toward its policyholders: an insurer must deal fairly with an

18   insured, giving equal consideration in all matters to the insured's interests." Tank, 105 Wn.2d at

19   386.

20        Washington courts recognize the right of the insured to pursue tort claims against the

21   insurer for conduct which violates the duty of good faith. "Claims of insurer bad faith 'are

22   analyzed applying the same principles as any other tort: duty, breach of that duty, and damages

23   proximately caused by any breach of duty.'" Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr.,

24   Inc., 161 Wn.2d 903, 916 (2007) (quoting Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485 (2003)).

1    To establish the tort of bad faith in the insurance context the insured must show that the insurer's

2    actions were "unreasonable, frivolous, or unfounded." <u>Kirk v. Mt. Airy Ins. Co.</u>, 134 Wn.2d 558,

3    560 (1998). "Whether an insurer acted in bad faith is a question of fact." <u>Smith</u>, 150 Wn.2d at

4    484 (citing <u>Van Noy</u>, 142 Wn.2d at 796). And "an insured may maintain an action against its

5    insurer for bad faith investigation of the insurer's claim and violation of the CPA regardless of

6    whether the insurer was ultimately correct in determining coverage did not exist." <u>Coventry</u>

7    <u>Assocs. v. Am. States Ins. Co.</u>, 136 Wn.2d 269, 279 (1998).

8         NAT's bad faith claim implicates three specific duties of good faith. First, an insurer

9    defending under a reservation of rights owes a "duty to refrain from engaging in any

10   unreasonable, frivolous, or unfounded . . . action which would demonstrate a greater concern for

11   [the insurer's] monetary interest than for [the insured's] financial risk." <u>Dan Paulson</u>, 161 Wn.2d

12   at 916; <u>Tank</u>, 105 Wn.2d at 388. Second, an insurer that initiates a coverage action "must avoid

13   seeking adjudication of factual matters disputed in the underlying litigation because advocating a

14   position adverse to its insured's interests would constitute bad faith on its part." <u>Dan Paulson</u>,

15   161 Wn.2d at 915. This is because "[a]n insurer defending its insured under a reservation of

16   rights has 'an enhanced obligation of fairness toward its insured' because of the '[p]otential

17   conflicts between the interests of insurer and insured, inherent in a reservation of rights

18   defense.'" <u>Id.</u> (quoting <u>Tank</u>, 105 Wn.2d at 383). Third, the insurer "must thoroughly investigate

19   the cause of the insured's accident and the nature and severity of the plaintiff's injuries." <u>Tank</u>,

20   105 Wn.2d at 388. These duties are also contained in various insurance regulations—as relevant

21   here: WAC 284-30-330, -370.

22

23

24

### b.  NAT has demonstrated Travelers breached its duty of good faith

The undisputed evidence shows that Travelers committed bad faith by commencing this action despite knowing its failed investigation into the underlying flooring damage left it without sufficient evidence to disclaim liability.

Travelers has long recognized that the "your work" and/or "your product" policy exclusions could prevent coverage for the damaged flooring. Within a month of tender Travelers recognized it needed to investigate the flooring damage to determine the applicability of these exclusions: "[i]nvestigation into damages needed as [it] appears there will be significant uncovered claims (work/product)." (Thorne Decl. Ex. B at 23 (Dkt. No. 74-2).) And Travelers knew that there was a limited window to investigate the epoxy flooring before it would be removed and replaced. (Ex. B to Thorne Decl. at 19-23, 26 (Dkt. No. 74-2 at 19-23, 26).) But Travelers sent only one investigator before the flooring was replaced. (Id.) And she simply made visual observations of the damage and took photographs. (Id.; Ex. B to Marconi Decl. (Dkt. No. 73-2).) Travelers' coverage adjuster did not visit the site, take a sample, or retain an expert before the repairs were made. (Thorne Decl. Ex. B at 19-23, 26 (Dkt. No. 74-2).) And Travelers did not retain a flooring expert until after the damaged flooring was replaced. (See Falstad Decl. ¶ 30 (Dkt. No. 57); Falstad Decl. Ex. O at 3 (Dkt. No. 57-15).)

Over two months before Travelers filed this action, its flooring expert, Phillips, put Travelers on notice that only forensic testing of the damaged flooring could allow him to determine the flooring failure's cause. (Rubenstein Decl. Ex. G at 3 (Dkt. No. 22-7 at 3). Phillips stated: "[I] cannot determine the cause of the failure without analyzing a product sample to determine the laboratory results of the mixture of the product" and "[a] forensic laboratory analysis will be able to determine what is the probable cause of failure." (Id.) Travelers has not provided any forensic evidence or expert evidence as to the cause of the flooring's damage.

1    The failure to conduct a lab analysis meant that Travelers could not reasonably determine

2    whether the flooring's failure would be excluded by the "your work" or "your product"

3    exclusions.  These two exclusions form the central theory on which Travelers sought the

4    declaratory judgment and has moved for summary judgment to disclaim all coverage liability.

5    (See Dkt. No. 55.) Both exclusions require evidence that the property damage "arose out of" the

6    insured's work or product and not some other source. (Travelers Policy at 5 (Dkt. No. 22-9).)

7    Travelers' failure to investigate meant that it could not make a reasonable determination of

8    coverage. This violated Travelers' quasi-fiduciary responsibilities to investigate the claims. See

9    Van Noy, 142 Wn.2d at 792; Tank, 105 Wn.2d at 388. And the undisputed evidence

10   demonstrates that Travelers filed this lawsuit knowing from its own expert that it could not prove

11   the claims it has asserted. Travelers actions were "unreasonable" and "unfounded" and constitute

12   bad faith. See Kirk, 134 Wn.2d at 560.

13   Travelers variously claims that its investigation was impeded by NAT's failure to

14   respond to document requests. But whether NAT failed to provide some materials that Travelers

15   requested does not excuse Travelers' failure to independently investigate the cause of the

16   flooring damage. See Tank, 105 Wn.2d at 388. Travelers' coverage adjuster repeatedly testified

17   that rather than independently investigate the flooring damage before the floor was replaced, she

18   simply asked NAT to provide her with information about the repairs. (See Falstad Dep. at 58:17-

19   60:16, 66:13-22, 68:8-19, 79:2-10 (Dkt. No. 92-1).) This is not a proper means of discharging the

20   duty to investigate a critical piece of evidence concerning coverage. The Court acknowledges

21   that NAT did not provide Travelers with the October 2018 letter from T&M which contained the

22   lab analysis of the defective flooring. (Falstad Decl. ¶ 51 (Dkt. No. 57 at 12).) The document was

23   only provided to Travelers after it filed this suit. (Id.) But this does not create an issue of fact

24

1   impeding the Court's finding of bad faith. Travelers owed an independent duty to investigate,

2   retain experts, and take flooring samples before the damaged floor was replaced and the evidence

3   lost forever. NAT's failure to provide the T&M letter does not absolve Travelers of this duty.

4   The Court also rejects Travelers' repeated, incorrect statements that NAT "had already

5   conceded liability for the replacement of the floors before the claim was even tendered to

6   Travelers." (Dkt. No. 92 at 11; see Dkt. No. 99 at 8.) While NAT had agreed to replace the

7   floors, it did so under an express reservation of rights and without conceding liability.

8   (Rubenstein Decl. Ex. 2 (Dkt. No. 89-2).) Similarly, the Court rejects Travelers incorrect

9   statement that "[t]here has never been any evidence to suggest that the flooring failed for any

10  reason other than NAT's improper installation." (Dkt. No. 99 at 8 (citing Phillips Decl. ¶¶ 4-5).)

11  This statement is false and contradicted not only by Travelers' own briefing (Dkt. No. 55 at 4),

12  but also by Phillips' May 2019 report to Travelers (Dkt. No. 22-7).

13          **c.      NAT has not demonstrated that Travelers' declaratory action
                      prejudiced NAT's position in the underlying dispute with SODO and
14                    13 Coins**

15  It is settled Washington law that an insurer who is defending under a reservation of rights

16  may file a declaratory judgment action to dispute coverage. See Dan Paulson, 161 Wn.2d 914-

17  15. But "it must avoid seeking adjudication of factual matters disputed in the underlying

18  litigation because advocating a position adverse to its insured's interests would constitute bad

19  faith on its part." Id. at 915 (quotation omitted). This is because the insurer defending its insured

20  under a reservation of rights has "an enhanced obligation of fairness toward its insured" arising

21  out of the "[p]otential conflicts between the interests of insurer and insured, inherent in a

22  reservation of rights defense." Tank, 105 Wn.2d at 383.

23          NAT claims that it in defending itself in this action it was forced to prove "its own

24  liability to SODO" in order to "prove Travelers had a duty to indemnify NAT for the repairs."

1    (Dkt. No. 98 at 5.) But NAT fails to elucidate how this is true or point to any evidence to support

2    this assertion. The Court does not find sufficient evidence of bad faith on this issue. In its

3    opening brief NAT also argues that it faced a "draconian choice" to either default against

4    Travelers or litigate coverage before Travelers had completed its investigation or made any

5    coverage determination. (Dkt. No. 71 at 19.) But this is alone is not evidence of bad faith.

6    Washington law permits the insurer to defend under a reservation of rights and file a declaratory

7    action to determine its coverage responsibilities. See Dan Paulson, 161 Wn.2d at 914-15.

8                        **d.        Presumption of harm and coverage by estoppel**

9           The Court agrees with NAT that the Travelers' bad faith conduct justifies application of

10   the presumption of harm and coverage by estoppel.

11          If the insurer violates its duty of good faith, the court applies a presumption of harm and

12   estops the insurer from denying coverage. Kirk, 134 Wn.2d at 564 ("Once the insurer breaches

13   an important benefit of the insurance contract, harm is assumed, the insurer is estopped from

14   denying coverage, and the insurer is liable for the judgment.") But "the insurer can rebut the

15   presumption by showing by a preponderance of the evidence its acts did not harm or prejudice

16   the insured." Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 394 (1992).

17          The presumption of harm applies to "third-party reservation of rights case," such as the

18   case here. Coventry, 136 Wn.2d at 277 (rejecting the presumption of harm in the first-party claim

19   context). But the presumption of harm does not attach where the insurer did not breach its duty to

20   defend, settle, or indemnify the insured and the bad faith claim is based "solely on procedural

21   missteps by the insurer in handling the claim." St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,

22   165 Wn.2d 122, 126 (2008). There the insured in "is not entitled to a presumption of harm or

23   coverage by estoppel, [and] . . . must prove all elements of the claim, including actual damages."

24   Id.

1    The Court finds that the presumption of harm applies and that Travelers has not

2    overcome it. Travelers has failed to demonstrate that NAT has not been harmed by its bad faith

3    conduct. Travelers' own briefing highlights testimony that NAT has suffered financial harm

4    from Travelers' refusal to fund the SODO and 13 Coins settlement and to pay NAT for the costs

5    associated with repairing the damage flooring. (Dkt. No. 92 at 24 (citing Rubenstein Dep. at

6    209:15-20 (Dkt. No. 56-1); see Rubenstein Decl. ¶ 8 (Dkt. No. 105).) Accordingly, the Court

7    finds that coverage by estoppel is the appropriate remedy. See Butler, 118 Wn.2d at 394.

8    Travelers' arguments on this issue all fail. First, Travelers mischaracterizes Ledcor Indus.

9    (USA), Inc. v. Mut. of Enumclaw Ins. Co., 150 Wn. App. 1 (2009). Travelers claims that Ledcor

10   stands for the proposition that estoppel is not available where the insured is fully defended and

11   where the insurer pays defense costs. (Dkt. No. 92 at 24). But in Ledcor the court found the

12   insurer engaged in bad faith and applied the presumption of harm. 150 Wn. App. at 9-10. The

13   insurer avoided coverage by estoppel only because it overcome the "usually difficult"

14   presumption by virtue of having paid all indemnity and defense costs. Id. at 10-11. The same is

15   not true here. NAT has not received indemnity for the SODO/13 Coins claims and has not been

16   paid for its costs to repair the flooring. (See Rubenstein Decl. ¶ 8 (Dkt. No. 105).) Second,

17   Travelers wrongly contends that coverage by estoppel cannot arise out of a failure to investigate,

18   as in Coventry, 136 Wn.2d 730. But Coventry is limited to first-party litigation—claims made

19   directly against the insurer—and it expressly distinguishes third-party litigation to which the

20   presumption of harm and coverage by estoppel apply. 164 Wn.2d at 737. Lastly, Travelers

21   argues that the presumption of harm does not apply to bad faith claims based on procedural or

22   "investigative issues." (Dkt. No. 111 at 11 (citing St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,

23   165 Wn.2d 122 (2008)).) In Onvia there was no evidence of a breach of the duty to defend,

24

1  settle, or indemnify and the claims were for "procedural bad faith and violation of the CPA."

2  Onvia, 165 Wn.2d at 128. But here Travelers' bad faith stems not from mere "procedural" or

3  technical violations of the insurance regulations. Travelers engaged in substantive violations of

4  its duty of good faith and those acts and omissions were unreasonable and unfounded. See Kirk,

5  134 Wn.2d at 560. Onvia is inapposite.

6                                    *        *        *

7          As to NAT's bad faith and coverage by estoppel claim, the Court GRANTS NAT's

8  Motion for Partial Summary Judgment and DENIES Travelers' Motion for Summary Judgment.

9  The Court further DENIES Travelers' Motion for Partial Summary as MOOT.

10         **2.      NAT is incorrect that Travelers denied coverage when it filed the Dec Action**

11         Throughout the briefing NAT has taken the incorrect position that Travelers disclaimed

12  or denied coverage by filing the declaratory action. There is simply no law to support this

13  conclusion. In Washington, insurers may reserve their rights and then seek a coverage

14  determination through a declaratory action. Dan Paulson, 161 Wn.2d at 914-15 ("The insurer

15  may defend under a reservation of rights while seeking a declaratory judgment that it has no duty

16  to defend. . . ."). NAT's incorrect argument undermines its reliance on Aecon Bldgs. v. Inc. v.

17  Zurich N. Am., 572 F. Supp. 2d 1227 (W.D. Wash. 2008) because the insurers had denied of

18  coverage. Aecon is inapposite, as NAT appears to acknowledge. (Dkt. No. 71 at 17.)

19         NAT also pursues a misguided argument that Travelers should be "judicially estopped"

20  from claiming that it has not denied coverage. This strained argument grafts judicial estoppel

21  theory onto the standard principals of Washington coverage law. This doctrine has no relevance

22  to this action and is not a means to prove a denial of coverage occurred. The Court agrees with

23  Travelers that "NAT's argument simply does not make sense." (Dkt. No. 92 at 20.)

24

1      **3.      Travelers has not demonstrated a flaw in NAT's CPA claim**

2          Travelers seeks summary judgment on NAT's CPA claim, asserting that there were no

3      violations, no proximate cause, and no injury. The Court denies the motion on this claim.

4          A private CPA action must prove that: (1) an unfair or deceptive act, (2) which occurred

5      in the conduct of trade or commerce, (3) affecting the public interest, (4) injured the plaintiff in

6      their business or property, and (5) which defendant caused. Hangman Ridge Training Stables,

7      Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 785-92 (1986) (citing RCW 19.86.020). The first

8      two elements may be shown by alleging that the acts are a per se unfair trade practice. Id. at 786.

9      "A per se unfair trade practice exists when a statute which has been declared by the Legislature

10     to constitute an unfair or deceptive act in trade or commerce has been violated." Id.

11         NAT appears to pursue only a claim for improper claims handling—a violation of WAC

12     284-30-330(4). (Dkt. No. 104 at 22-24.) This regulation obligates insurers to "conduct[] a

13     reasonable investigation" before "refus[ing] to pay a claim." WAC 284-30-330(4). NAT argues

14     that a triable issue of fact exists as to "whether or not Travelers has refused to pay the settlements

15     with SODO and 13 Coins, [and] having failed to conduct or complete a reasonable

16     investigation." (Dkt. No. 104 at 24.) The Court agrees and finds this constitutes a per se unfair

17     trade practice. Additionally, the Court finds there to be sufficient evidence of harm to NAT

18     traceable to Travelers' refusal to fund the SODO/13 Coins settlement. The Court DENIES

19     summary judgment on this claim.

20     **4.      Travelers fails to attack NAT's negligence claim**

21         As NAT correctly notes, Travelers failed to provide any to argument to justify dismissal

22     of NAT's negligence claim. (Dkt. No. 104 at 25.) Travelers only addressed the issue in its reply

23     brief. (Dkt. No. 111 at 13.) But this half-page argument is conclusory: "[t]his issue has been

24

1  addressed." (Id.) Having failed to provide argument and cite to evidence, Travelers has defeated

2  its own motion and the Court DENIES summary judgment on this claim.

3  **C.      Motion for Determination on Protective Order**

4          NAT's motion for determination essentially asks the Court to absolve it of violating the

5  Protective Order in this case. Without filing a motion to seal, NAT filed its opposition to

6  Travelers' Motion for Partial Summary Judgment with citations to Travelers' claims manual

7  which Travelers had marked as confidential pursuant to the Stipulated Protective Order. (Dkt.

8  No. 87.) NAT filed the manual itself on the docket. (Dkt. No. 91-7.) This violated the Court's

9  Protective Order. (Dkt. No. 64). The Order unequivocally states that if Travelers did not waive

10  the confidential designation—which it was not required to do—NAT had to file materials under

11  seal pursuant to Local Rule 5(g). (Id. at ¶ 4.4.) Had NAT complied with this provision, it should

12  have filed these materials under seal, and Travelers would have then borne the burden of

13  demonstrating compelling interests to justify their sealing. But NAT's counsel disregarded this

14  process entirely and filed the purportedly confidential materials publicly. It then sought an after-

15  the-fact absolution of its failure to comply with the Protective Order by challenging the propriety

16  of Travelers' confidential designation.

17          NAT's Counsel's failure to comply with the Protective Order is inexcusable. The Court

18  agrees with Travelers that this document and the citations thereto should be stricken and sealed.

19  The Court has not relied on the document or citations thereto in reaching its determination of

20  Travelers' Motion. The Court ORDERS that Docket No. 87 and 91-7 be SEALED and ORDERS

21  NAT to refile its Opposition to Travelers' Motion for Partial Summary Judgment with all

22  references to the claims manual redacted. NAT must refile the redacted opposition within three

23  business days of entry of this order. The Court does not impose further sanctions. In so ruling,

24

1 the Court notes that Travelers itself has referenced to the substance of the claims manual and did

2 not itself seek to file those references under seal. (See Dkt. No. 99 at 12.)

3 **CONCLUSION**

4 Travelers engaged in bad faith by conducting an inadequate investigation and then filing

5 suit when it knew or should have known that it could not prove an essential element of its claims

6 due to the inadequate investigation. Coverage by estoppel is proper in this matter and Travelers

7 has not overcome the presumption of harm. And Travelers may not obtain the declaratory relief

8 it seeks. As to this claim the Court: (1) GRANTS NAT's Motion for Partial Summary Judgment

9 (Dkt. No. 71); (2) DENIES Travelers' Motion for Summary Judgment (Dkt. No. 82); and (3)

10 DENIES AS MOOT Travelers' Motion for Partial Summary Judgment (Dkt. No. 55). The only

11 remaining issue as to NAT's bad faith claim is to determine the reasonableness of the underlying

12 settlement and NAT's damages. NAT's CPA and negligence claims have survived summary

13 judgment. And the Court DENIES Travelers' Motion (Dkt. No. 82) as to these claims.

14 Lastly, NAT's failure to follow the Protective Order precludes the relief it seeks in the

15 Motion for Determination. The Court DENIES the Motion and ORDERS NAT to refile a

16 redacted copy of its Opposition brief within three business days of entry of this Order.

17 The clerk is ordered to provide copies of this order to all counsel.

18 Dated November 13, 2020.

19

20 Marsha J. Pechman
United States District Judge

21

22

23

24